Good morning, Your Honors. Kara Hartzler for Petitioner Adrian Espinoza-Estrada. The sole question in this case is whether the immigration judge's flawed order of deportation caused Mr. Espinoza prejudice. It did, for multiple reasons. First, Mr. Espinoza was not deportable as charged at the time of his removal proceedings, and it's important to note that if the Court agrees with us on that point, the case is over. Second, we would also contend that even if the Court believes he was deportable as charged, the IJ failed to advise him of his eligibility for no fewer than three forms of relief, all of which he had a plausible claim to. But because the first argument of deportable as charged is the most efficient way to dispose of this case, I'd like to begin there. This Court's directly on-point case law shows that neither of Mr. Espinoza's convictions were deportable at the time of his removal proceedings. This is a fact that the government has never substantively disputed. Regarding his conviction for domestic battery under California Penal Code 243, both this Court's decision in Ortega-Mendez, as well as the BIA's decision in Sinudo, held that a conviction under this exact same California statute with this exact same record of conviction is not deportable as a crime of domestic violence. So from your perspective, that's the end of the story. We really don't need to consider the rest of the matter. That's the end of the story. Now, on that one, I suspect the government is going to argue, not that you're wrong on the merits, that there's been waivers. So how do you respond to that? I understand, Your Honor. And I agree. It should have been raised below, and we acknowledge that and we take responsibility for that. Right. So how do you get past the waiver argument? What I would point out, first of all, Your Honor, I would have three responses to that. First of all, our claim all along has not been deportable as charged versus eligible for relief. Our claim is that the underlying removal order was valid. So because this Court and the Supreme Court have construed broadly what may be contained, this is an argument in support of our claim rather than a new claim itself. The second point I would bring up to this Court is that even assuming that the Court doesn't agree with that, this is a pure question of law, and the government is not prejudiced by us raising it. In fact, I would point out that we argue this extensively in our opening brief. And at that point, the government did have a full and fair opportunity to argue it, and it never did. It never substantively disputed this issue. And so at some point, the government can't just cry waiver. It needs to respond and show why it was somehow prejudiced. And then the final point I would make, Your Honor. This is clearly our decision as a Court. If we feel there's been full, fair notice and opportunity to respond, waiver is certainly not compelled. It's up to us. Exactly, Your Honor. Exactly. And then you would say we just engage in de novo review, or is it a plain error review? Well, Your Honor, we would certainly argue de novo review. But even if the Court does do plain error, we would argue that we clearly meet that. This case and the deportable as charged issue can be resolved by looking at two on-point decisions from this Court that there's no case law against them. So we would meet plain error. One is Camacho-Lopez. What's the other one? I'm sorry. Actually, I would state that the first one would be Ortega-Mendez, which says that 243 is not deportable. And the second one is Ledesma-Galicia that says that a pre-1988 conviction cannot be deportable as an aggravated felony. And neither of those cases have – there's no case law on the other side. So the Court can just end it there and say he's not deportable as charged. And then, Your Honor, under Camacho-Lopez, because he's not deportable as charged, we prove prejudice. So the next point I would say that even if the Court – I'm sorry. Were you? Okay. The next point I would say is that even if the Court disagrees and gets to the issue of eligibility for relief, Mr. Espinosa was eligible for no fewer than three forms of relief that the immigration judge did not advise him of. And – Let me just understand. With respect to your first argument, you think that you basically satisfy 1326 D1 and 2 solely because the IJ didn't advise about something that has nothing to do – I mean, that's what I've never quite understood about what we did in Camacho-Lopez. Because it seems like that's what we said there. That's what I believe Camacho-Lopez says, Your Honor. Now, first of all – How have you exhausted your administrative remedies with respect to the argument that you want us to rule on, this threshold question? Sure. First of all, Your Honor, I would point out that the government has never contested that we met 1 and 2. That was never argued below. And so that would be a new issue here. But even assuming that this Court reaches that issue, what Camacho-Lopez did is that it looked at, first of all, whether there was exhaustion of administrative remedies and whether the person was deprived of judicial review. Now, because in that case the person had an aggravated felony, the person was not advised of his or her eligibility to apply for voluntary departure, which an aggravated felony would have barred. So we have the exact same case here. In my situation, in Mr. Espinoza's situation, because the IG believed he had an aggravated felony, he wasn't advised of cancellation of removal of voluntary departure. And so it's the exact same fact pattern as in Camacho-Lopez. I would also point out – I understand Your Honor's argument because it is a little bit confusing in terms of how you can do it on different grounds. But I would also point to two decisions from this Court, this Court's decision in Gomez as well as this Court's decision in Ubaldo-Figueroa, where the Court did decide prongs 1 and 2 on different grounds than it decided prong 3 on. So there certainly is precedent within this Court to not have all three be decided on the same grounds. And is the rationale that the reason you're basically excused from having to have litigated this back in 1998 at the time of the removal order because the IJ, in addition to having the obligation to advise about any forms of discretionary relief that were available, obviously should have advised that, hey, you know what, you're not even removable on the ground that you've been charged with? Exactly. And that's what this comes down to is that if the government is going to use a removal order as a predicate, as an element of a criminal conviction, we need to make sure it was right the first time around. And here it just wasn't right the first time around. And so it's fundamentally unfair to convict someone and subject them to a much higher potential sentence than, for instance, at 1325, on the basis of a removal order that everyone now agrees and all the courts agree was wrong at the time. So that's where it just comes into this issue of the fundamental. So it's just kind of a due process argument that just wasn't fair, basically. Exactly, Your Honor. Exactly. Do you want to save any time? Yes. I'll save the remainder of my time. I don't know if my colleagues have any immediate questions. Not at this time. Why don't we hear from the government? Thank you. And give you a chance to rebut if you wish. Thank you. Good morning, Your Honors. Janet Kugraw for the United States. As an initial matter, the argument that the appellant primarily relies upon in this case was waived by the failure to raise it in the district court. I'm not sure that's the argument they primarily rely on. It's only one of the arguments. And if it's not waived, it's the cleanest. But primarily may be an exaggeration. And let me address the issue of the waiver. And I think that in my brief, I erred in stating the level of the waiver. Rule 12 of the Federal Rules of Criminal Procedure provides that any grounds for dismissal of an indictment must be stated by motion prior to trial. So what defendant tries to do here, what the appellant tries to do is say, well, I filed a 1326D motion. And I said that that prior removal was invalid. Therefore, on appeal, I am entitled to raise any grounds to demonstrate that that prior order was invalid. In what respect has the government been prejudiced by not being allowed to address it at the district court? Were there facts you would have brought in? I mean, give me a hint as to how the government was hurt. As an initial matter, the standards of review, the amount of evidence that the court looks at to determine eligibility for relief, to determine whether the underlying conviction was one for which the appellant was removable, all of those are issues that require different levels of proof. This is not just a... You know, you're talking too much in the abstract on the question as to whether or not that was categorically a crime of violence, which would then support removal. I mean, that's the argument, that they did not support removal, and that was the charge, supporting removability. Would the government have brought in evidence at the district court had the argument been raised, or would this have been a purely legal argument? In the large respect, it is a legal argument. Okay. You gave me a whistle word. Was there any evidence the government would have brought in on this argument, had the argument been made in the district court? There are additional documents. I know it's a categorical. We're looking at it as a categorical. There are additional documents that were in existence regarding the nature of that prior domestic violence conviction. That doesn't matter in a categorical situation, does it? It's only when we get to the modified categorical that what you're talking about makes any difference. Isn't that right? Right. The conviction documents show that there was conviction for 242, 243, and you're correct that those would have been the documents that the district court would have relied on. But in U.S. v. Rio, which is 288, Fed 3rd, 1126, in that case, it talks about the degree of waiver of a claim that's not raised prior to trial under Rule 12. Forgive me. Let's go back a little bit here. Does the government agree that as a matter of law that the crime, which was the predicate for the petitioner's loss, if you will, is a categorical match? It's a categorical match. You agree with that, right? Yes. So these outlying documents don't really matter. They don't matter. You're looking at the statute. So there's really no evidence that would be put on. The real question is, in what way was the government prejudiced? This is what my colleague, of course, has been exploring by not having the information available at the district court. And, of course, it was raised, I gather, in the opening brief here, and I don't know how much you responded to it. Since you're talking about a matter of pure law, in what way was the government prejudiced? That's, of course, the major factor we focus on in determining whether the waiver applies here. In terms of prejudice, because it wasn't raised prior to trial, the United States put on a trial of this case. If this is a pure issue of law that could have been decided prior to trial, the United States is prejudiced. Perhaps it could have, but nobody thought of it. Right. They didn't think of it. And I would just urge that under the real case... But let me make sure I understood your answer. You're arguing that the government was prejudiced because it had to go to the trouble of a trial that had the argument been made ahead of time and the government would have simply capitulated. No, absolutely not. So... I didn't understand your argument about prejudice. Right. So, absolutely not. And if I might address the argument, the substantive argument as to the removable discharge. Well, wait a minute. Let's take care of the waiver first. Sure. That seems to be your main point. I gather that you agree that if the waiver argument goes away, you lose. No, I don't. You don't agree with that? Absolutely not. Why is that? Because at the time this appellant was removed from the United States, the controlling law appellant cites the Ortega-Mendoza and Maduro-Sanudo cases. Those cases were decided in 2006. But that's true in Camacho, Lopez as well. Right. And so this is where I think you may have hit the argument in terms of looking at the removable discharge as an independent claim aside from some other basis for getting past the 1326 D-1 and 2. Camacho-Lopez wasn't raised as a purely not deportable discharge. Camacho-Lopez was a case where the appellant argued that the I.J. should have advised him of availability of relief under 212C. Right. So it's a 212C issue. But the ground on which the court ruled was he wasn't deportable at all? It was. And I do note in terms of the applicability of the Camacho-Lopez case, I know the appellant cites to the government's brief in that case for the argument that it was an issue that was raised and argued. When you look at the opinion in Camacho-Lopez, it says on two different occasions, the government conceded retroactivity. The government conceded that issue. So the question of whether at that point in time... So you're saying we are not bound by the points of law that Camacho-Lopez seems to resolve? No, no, no. What I'm saying is that I think subsequent case law, Vidal-Mendoza and those case laws tells us that when looking at the question of availability of relief, we look at the case law which existed at the time of the removal. And if that rule had been applied in Camacho-Lopez, he would have lost on the ground that we allowed him to prevail on? In that case, the government conceded. So the argument was not before. And I think Vidal-Mendoza is on point on this. So what you look at to determine availability of relief, and what I would argue you also look at to determine whether he was removable. So let me make sure I understand, because I look at Camacho-Lopez and I seem like an exact match to our case. You're saying that you do not concede the points of law that the government conceded there, and the government now wants to basically re-litigate the Camacho-Lopez holding? The Camacho-Lopez holding, it's kind of this... If you want to look at Camacho-Lopez for the time being, and retroactively would apply a change in the law, then yes, I would say that subsequent law of this Court, Vidal-Mendoza in particular, and cases interpreting past that, are directly in conflict. And the way to resolve that is the issue was not raised. It was not... In Camacho-Lopez, it was not an issue. The government conceded retroactivity. The government here does not concede retroactivity. Vidal-Mendoza says that we look at the law at the time. If you look at the law at the time, they cited Ortega-Mendoza and Inres-Sanudo for the proposition that this appellant was not removable. He was charged in 1998. The law existed. If you look at the Ortega-Mendoza case, it discusses a lot of California law, but it cites one federal case from this Court, and that's U.S. v. Robinson. U.S. v. Robinson is a 1992 case that directly held that battery under Section 242 of the California Penal Code is a crime of violence. That was the law that existed in 1998 when this appellant was placed in removal proceedings. So if this Court gets to the question of was this appellant removable as charged in 1998, the answer is yes, he was. From there, the question then becomes was he eligible for additional types of relief. The district court in this case went through the factors and applied the heightened standard based upon his criminal history, and in this case, all I would add is the appellant cites a lot of cases in terms of plausibility of relief. If you look at all of those cases, the one difference is in every one of those cases, there was a long gap in time. And here, the charges that rendered this defendant, this appellant deportable was the domestic violence, which occurred right up until the time he was removed to the United States. But Taylor was the law then, was it not? Right. In terms of categorical versus modified categorical. Right. Okay. Thank you very much for your argument. Let's hear the rebuttal from the Petitioner. Thank you, Your Honors. First of all, to begin with the Robinson issue, I would point out that the government did not raise Robinson in their answering brief and is only raising it now for the first time. But even if the Court looks at it, I would point out that Robinson used a different definition of a crime of violence. It was looking at the sentencing guidelines under 4B1.2. And that section specifically contains the residual clause that has the language saying that it can include the potential for risk of serious physical injury. Now, in our situation, we were using a different definition of crime of violence. Because it was a misdemeanor, the only definition of crime of violence that was relevant to our case at the time of removability was the elements test, whether it involved the use, attempted use, or threatened use of physical force. And Robinson didn't decide it on those grounds. If you look at Robinson, it specifically mentions several times the residual clause. And so, in our opinion, even if the Court looks at Robinson, it wasn't applicable. It wasn't the law at the time of the removal proceedings. Can I ask you, how do you resolve the apparent tension between Camacho Lopez and Del Mendoza? Because I look at Camacho Lopez as an exact match to this case. But then I read Del Mendoza, and I think, boy, that legal principle seems to doom your argument here. So how do we reconcile this? There's two reasons that I would distinguish them, Your Honor. First of all, Vidal Mendoza dealt with a situation where there was absolute clear case law against the person at the time of the removal proceedings. And Vidal Mendoza said, we're not requiring judges to be clairvoyant and predict that the law will change in the future. But Vidal Mendoza doesn't apply to a situation like here, where there was absolutely no case law on point. And, in fact, in the future, both the BIA and the Ninth Circuit confirmed that the person was not removable. The second way I would distinguish Vidal Mendoza is that Vidal Mendoza is replete with references to how it applies in the context of eligibility for relief. It cites the regulation about how an I.J. has the responsibility to advise relief, and it doesn't reach the issue of whether the person is deportable as charged. So here, in Vidal Mendoza, ultimately prejudice had to be shown by eligibility and a plausible claim. Here, as in Camacho Lopez, it didn't. And that's why Camacho Lopez applies rather than Vidal Mendoza in our case. I would also just like to make one or two final points. First of all, in terms of the Camacho Lopez and whether the government conceded, even assuming that the government somehow briefed all of these issues, reaching the issue, and then somehow conceded that at oral argument, in fact, this Court is not bound by the government's concession. And this Court, if the Court believes the government is wrong, it should not follow the government's concession. So any concession on that matter wouldn't necessarily be dispositive. And the final point I'd just like to make is how I don't believe that the government has really ever gotten back to this issue of how it was prejudiced, the fact that this wasn't raised below, because it makes reference to these vague documents. But ultimately, under De Camp, I believe that the Court might not even be able to reach the modified categorical approach, and so any documents would be irrelevant. Thank you both. On behalf of the Court, we compliment both of you. It's nice to have two lawyers who really know what they're talking about, and it's a real pleasure. So thank you. Thank you, Ramsey. Thank you.
judges: Fletcher, Smith, Watford